UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MICHAEL J. MANNING,                                      17-CV-1671 (GHW)

       *Plaintiff,*

  -against-

NANDOR TECHNOLOGIES, INC.;
NANDOR VACUUM TECHNOLOGIES, INC.;
and individually and jointly MARK
SALTAMACH; JIM MUGAVERO and
DEBORAH RUTT,

       *Defendants.*
-------------------------------------------------------------------X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Defendants*
**295 Madison Avenue
New York, New York 10017
(212) 889-6565**

# TABLE OF CONTENTS

| SUBJECT | PAGE |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| POINT I    THE CLAIMS AGAINST DEBORAH RUTT SHOULD BE DISMISSED | 1 |
| POINT II    MANNING DOES NOT SET FORTH A FAILURE TO HIRE CLAIM | 3 |
|    A. Manning Does Not Allege That He Asked For His Job Back | 3 |
|    B. Manning Fails To Allege A Discriminatory Motive For His Alleged Failure To Be Re-Hired | 4 |
| POINT III    MANNING DOES NOT SET FORTH A CLAIM REGARDING THE DEPARTMENT OF LABOR'S DENIAL OF HIS APPLICATION FOR UNEMPLOYMENT BENEFITS | 5 |
| POINT IV    MANNING DOES NOT ADDRESS THIS COURT'S LACK OF SUBJECT MATTER JURISDICTION OVER HIS CITY LAW CLAIMS | 6 |
| POINT V    DEFENDANTS' MOTION IS NOT MOOT | 7 |
| CONCLUSION | 8 |

**PRELIMINARY STATEMENT**

In his opposition, Plaintiff Michael J. Manning ("Manning") fails to present any genuine support for his claims in the Complaint in the Second Action. Rather than addressing Defendants' arguments, Manning instead parrots the conclusory allegations of the Complaint and cites generic points of law that are not in dispute. Manning's proposal that he be permitted to submit yet another Complaint in this action – though he has not made a motion to seek leave to amend – should be denied, as there are no additional facts that can cure the defects in the Complaint. Defendants, therefore, respectfully request that the Second Action be dismissed, without leave to replead and with preclusive effect on the First Action.[1]

**POINT I**

**THE CLAIMS AGAINST DEBORAH RUTT SHOULD BE DISMISSED**

In his opposition, Manning does not dispute that individual Deborah Rutt was never employed by Nandor or held a position of authority over Manning. Furthermore, the Complaint has absolutely no allegations that Rutt harbored a discriminatory or retaliatory bias against Manning of any kind, so that the claims against her should be dismissed.

Revealingly, Manning ignores the substance of Defendants' argument – that taking a picture of Manning's wife from a public place, with no repercussions – does not satisfy the adverse employment action prong of his prima facie case. In his opposition, however, Manning essentially ignores this issue, focusing instead on the academic legal question of whether a plaintiff may bring claims on behalf of his wife regarding conduct that took place outside of the workplace. As set forth in Defendant's initial papers, Manning's allegations, even if true, do not allege adverse employment

---

[1] Manning's opposition inappropriately addresses Manning's allegations relating to his employment and resignation. Defendants submit that those allegations are more appropriately addressed in the First Action, since they are not at issue in the Second Action, which addresses only Manning's post-employment allegations.

action sufficient to support a cause of action for retaliation.

Manning presents no authority for its claim that having one's picture taken from a public place, with nothing more, is actionable as material adverse employment action. Manning refers to the Supreme Court's holding in Burlington North & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006), but ignores that this is the same standard that Defendants addressed. Manning relies upon Thompson v. North American Stainless, LP, 562 U.S. 170, 174 (2011), which is not applicable because the plaintiff's fiancé in that case was fired, an adverse action that did not occur in this case. This case must also be distinguished from Barber v. A&J Hometown Oil, Inc., No. 11 CV 3350 (CS) (S.D.N.Y. Dec. 11, 2012), a case handled by Manning's counsel, where the plaintiff alleged that the defendants publicly called her husband "a piece of shit" and "a whore," referred to the plaintiff's daughter as an "inbred nigger baby" and later ran the plaintiff's husband off the highway while he was driving. The egregious allegations in Barber, juxtaposed with the tame facts of this case, confirm that there are no facts plead that establish adverse employment action.

The most Manning argues is that he felt "threatened." As set forth in Defendants' initial brief, it is well settled that a plaintiff's feelings alone are not sufficient to establish adverse employment action. See Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997); Perodeau v. City of Hartford, 2004 U.S. Dist. LEXIS 12532, at *13 (D. Conn. Mar. 31, 2004).

Since there is no adverse employment action flowing from the alleged photograph, the causes of action against the other Defendants for that same conduct should similarly be dismissed.

## POINT II

## MANNING DOES NOT SET FORTH A FAILURE TO HIRE CLAIM

A.  **Manning Does Not Allege That He Asked For His Job Back**

Defendants' initial brief noted that Manning's Complaint fails to include any allegation that could be reasonably construed to be an application. Manning's opposition simply ignores this point and simply restates the conclusory allegations of the Complaint. Defendants could not have refused to rehire Manning since he never asked for his job back, so that his failure to rehire claim should be dismissed.

Manning presents no explanation for why he did not speak to Saltamach, the owner and President of Nandor, even though Manning had been employed there for years and could have reached out to him. Manning had the means and the ability to contact Saltamach directly and should not be excused for declining to do so.[2]

Manning repeats that his application was "through" Mugavero, his co-worker. (Manning Brief pg. 11). It is unreasonable for Manning to depend on Mugavero to speak to Saltamach – *particularly since it was Mugavero who had purportedly forced Manning out of the workplace.* (¶¶193-194). Manning's claim that he trusted his harasser to get him his job back does not set forth a plausible claim.

In the initial motion, Defendants noted that Manning did not genuinely ask for his job back because he filed for unemployment the same day as his request, February 29, 2016. Manning's response is that, according to the Complaint's broad language, Manning could have applied for

---

[2] In fact, the Complaint does not even plead a resignation, much less a re-application. All the Complaint alleges is that "the escalating abuse forced Mr. Manning's employment to end on or around February 26, 2016." (¶195).

3

unemployment at any time in February. This means that, according to Manning, it is possible that he filed for unemployment *before* he resigned on February 26, 2016 (Complaint ¶195), which makes no sense.

Manning also claims, in his opposition, that it would have been reasonable for him to apply for unemployment on February 29 because Saltamach sent him a letter that same day where Saltamach accepted Manning's resignation. (Exhibit B). This is not possible under the facts plead, since Manning received that letter by mail, as the Complaint specifically notes that Manning did not speak with Saltmach directly. (Complaint ¶211). It is not plausible that Manning received Saltamach's letter the same day it was mailed.

Manning does not respond to Defendants' argument that, even assuming Manning did re-apply for his job, Saltamach had no obligation to rehire him given the circumstances of Manning's resignation. The only contemporaneous document from this time period is Saltamach's letter of Monday, February 29, which the Complaint specifically references (¶¶214-215) and which Manning now makes part of the record by attaching it as an exhibit. This letter confirms that Manning had left work on the Thursday and Friday before without permission, after having 15 absences in the prior year, then texted Saltamach on Monday morning stating that he was leaving Nandor and asking that Saltamach mail him his last couple of pay stubs. Manning's argument that, despite his conduct, Saltamach should have been required as a matter of law to re-hire Manning, is unreasonable.

**B.     Manning Fails To Allege A Discriminatory
        Motive For His Alleged Failure To Be Re-Hired**

Manning's opposition confirms that the entire basis for Manning's disability discrimination claim is Saltamach's belief that Manning had "excessive absenteeism," which Saltamach stated to

4

Manning in his letter of February 29 and in his submission to the Department of Labor. Neither of these documents contain any reference to Manning's medical condition.

In his opposition, Manning claims that because some of these absences related to doctor's visits, he must have been perceived to be disabled. The fact is, Manning presents no authority for his sweeping claim that a handful of doctor's appointments scattered over a period of years can be converted into a disability. Manning does not demonstrate how doctor's notes from March 2014 and May 2015 could create a perception that Manning was disabled, which in turn affected his alleged re-application in February 2016. There are no facts plead that could support a finding of a discriminatory animus based on disability, so that Manning's request to amend his Complaint to give further details about his medical conditions would be futile.

Additionally, Manning now argues in his opposition that he was not rehired not only because of his purported disability, but also because of his laundry list of discrimination claims. However, even in the section of his brief referring to the inference of discrimination regarding his failure to rehire claim, he discusses only the disability claim. (Pg. 10). Manning does not allege that his failure to rehire claim is based on anything other than his purported disability, so that his failure to rehire claim based on race, national origin, sexual orientation, associational discrimination or any other claim should be dismissed.

## POINT III

**MANNING DOES NOT SET FORTH A CLAIM REGARDING THE DEPARTMENT OF LABOR'S DENIAL OF HIS APPLICATION FOR UNEMPLOYMENT BENEFITS**

Manning indignantly states that "Nowhere in the Complaint is there a cause of action against Defendants based solely on Defendants Saltamach and Nandor Technologies contesting Plaintiff's

application for unemployment benefits." (Manning Brief pg. 18). However, paragraph 1 of the Complaint specifically includes Defendants "contesting Plaintiff's application for unemployment benefits" as an allegation, which is then repeated throughout the remainder of the Complaint. Accordingly, Defendants have no choice but to address that allegation.

Manning ignores the authority that Defendants cited in their initial brief demonstrating that they had a right to contest Manning's application for unemployment. Instead, Manning cites boilerplate language regarding the standard for retaliation. Manning accuses Defendants of ignoring case law, but does not cite one case addressing the merits of his claim, merely citing the broad language of Burlington North & Santa Fe Railway Co. v. White. Defendants had a right to contest Manning's application for unemployment, particularly under the circumstances of Manning's resignation. Their exercise of that right cannot form the basis of a cause of action.

In any event, the decision to deny Manning's application was made by the Department of Labor, not by Defendants. Although Manning seeks sympathy citing his "precarious financial position," this only raises further questions as to why he did not appeal the Department of Labor's determination. Manning's claims based on the denial of his application for unemployment benefits should be dismissed.

## POINT IV

### MANNING DOES NOT ADDRESS THIS COURT'S LACK OF SUBJECT MATTER JURISDICTION OVER HIS CITY LAW CLAIMS

Defendants' initial brief set forth the clear and settled law stating that the Court lacks subject matter jurisdiction under the New York City Human Rights Law because none of the conduct alleged in the Second Action had any impact in New York City. Manning's only reference to this argument

6

is one sentence stating that the Department of Labor is located in New York City. (Manning Brief pg. 19). This is woefully insufficient to give rise to a claim under the City Law. In fact, even where the decision to fire is made in New York City, the City Law cannot apply if there is no impact in New York City. See Shah v. Wilco Sys., Inc., 27 A.D.3d 169, 176 (1st Dept. 2005); Lambui v. Collins, 2015 U.S. Dist. LEXIS 136329, at *14 (E.D.N.Y. Sep. 30, 2015). Accordingly, Manning's claims under the City Law must be dismissed.

## POINT V

## DEFENDANTS' MOTION IS NOT MOOT

Manning argues that Defendants' motion to dismiss is moot because he "volunteered" to remove all of his claims and include them in the First Action. Defendants do not consent to this proposal, as it would deny them the ability to address those claims on a motion to dismiss. Furthermore, Manning previously sought leave to include the post-employment claims in the First Action, which application was denied as untimely. Manning should not be permitted to circumvent this Court's prior Order or Defendants' rights under Rule 12(b) by "volunteering" to transfer these claims to the First Action.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in their initial moving papers, Defendants respectfully request that the Complaint in the Second Action be dismissed with prejudice and with preclusive effect in the First Action, without leave to replead, and for such further relief as this Court deems just and proper.

Dated: New York, New York
June 28, 2017

                                            **SCHWARTZ PERRY & HELLER, LLP**
                                            *Attorneys for Defendants*

                                            By: */s Brian Heller*
                                                  DAVIDA S. PERRY (1879)
                                                  BRIAN HELLER (4004)
                                                 295 Madison Avenue
                                                 New York, New York 10017
                                                 (212) 889-6565